Good morning, Your Honors. Ralph Rogeri and Mary Lee appearing on behalf of Optional Capital, the appellant in this case. I'd like to reserve five minutes of my time if I can. You may do so, Counsel. Just watch the clock. Thank you. This is an appeal from a order of the district court judge imposing an injunction prohibiting Optional from executing on a judgment it obtained in the amount of approximately $33 million against the Kim claimants in this case. And the district court judge based her decision that an injunctive relief lied because of an order that she made with respect to a summary judgment motion that we actually brought and was actually denied. However, at the time that the levies on the properties took place, that particular order became elevated to findings of fact and conclusions of law that were used to justify the injunction in this particular case and, in particular, the finding that there would be irreparable harm. But didn't she say more specifically there were serious questions as opposed to – I mean, that's what she relied upon, didn't she? Serious questions as to the merits of the ownership of the property. Well, she did, and that is one particular finding that needs to be made, and she did make that particular statement. There was no evidence to support that, and we did not address in any great detail the relative merits of the question of ownership between the Kims in this particular case and Optional as to these particular properties. Until it became clear to us that some of the claimants who were making claims to these particular properties are suspended corporations and have no right and have been participating under this umbrella of the Kim claimants for a fairly long period of time and were actually doing so as appellees in this particular case. But didn't she want to just maintain the status quo? Well – And it wouldn't – she wouldn't be able to maintain the status quo with your client levying on the property. But the status quo at the time that the levies was completely different than the status quo at the time that the Ninth Circuit initially issued its opinion, finding that she had erred in refusing to allow Optional to litigate this ownership question. Because the Ninth Circuit then subsequently decided that Optional had prevailed in its claims against the Kims. Well, partially. Partially. Partially. It did not find harm with respect to the fraud being interrelated with the conversion of the approximately $33 million, $37.1 billion that they stole. Now, you never did have a stay pending appeal that would have protected your priority, perhaps. Well, we're in federal court. And the reality is that in this particular, in the United States district courts and in the federal courts, when there is an order of a district court judge that is reversed or vacated, that's a malarkey. It doesn't count. And that's been the law for many, many, many, many years. And so effectively what we have in this case is that ultimately the government convinced Judge Collins to give effect to her order that had been vacated. Well, now, are you asking us to determine the priority of these claims, of these asserted liens? Well, we are asking that you make a determination that the, that with respect to the government's claim in this particular case, that the priority of optional is first, in that the district court erred by giving effect to her judgment of non-suit or judgment notwithstanding the verdict in this particular case. But is that a final order, the priority of the claims that we can even look at? Well, yes. It's not final. Now, the way this matter came before the district court was that because the status quo had changed and the, there was now the reversal and reinstatement of optional's judgment, optional has rights as a judgment lien holder under its judgment lien. Now, perhaps you can help me here. It seems to me that the issue of who owns this property doesn't seem to depend in any way on the lien priority issue. Am I mistaken? No. You're not mistaken in that. But the reason that we, optional has nothing to gain by establishing that it's the owner of these particular properties. To it, it is nothing more than extended delay and extended delay. Even if it prevails and when it prevails, because it will prevail, then it will be an appeal and this will drag on for years and more years and more years. So at the end of the day here, the kin claimants will be entitled to a reduction on the judgment that optional has against them with regard to these particular properties. But there is no purpose whatsoever served other than a waste of judicial resources and time for optional to again prove that they stole this money and that money has some relation to the purchase of these particular properties. So that is why we, first of all, sought a request to have priorities determined under California Code of Civil Procedure. This section escapes me right now. 708 point or whatever the section is, I apologize for going brain dead here, but the section dealing with judgment liens that states that even a judgment lien can move the court as a judgment lien holder for a return of any particular judgment that is awarded in this particular case. So even were it to be found that somehow these properties were completely separate from the monies that were stolen and have never been repaid, it's going to be the same with respect to optional. And that is that they are going to have to litigate for a long period of time and there's going to be more and more delay. And it's already been 11 years since the money was stolen from optional. So what are you asking for? For the injunction to be lifted? Yes. And then what happens? Then what happens is that the marshal levies on the properties and they are turned over to optional. Now, has anything happened in this litigation since the time it was filed here that would affect this? Obviously what happened, obviously, is that the district judge enjoined the levy with the understanding that there would be further developments in terms of identifying precisely what the order was or the order of succession in terms of priorities was. Has anything happened that we don't know about that would affect this at this point? Well, two things have happened in this case that affect it. Number one, subsequent to or immediately after the Ninth Circuit reinstating optional judgment against the Kims, the Kims, with the assistance of their counsel, stole the money that was sitting there, at least $13 million that was in the Credit Suisse Bank, and transferred it to DOS. And so that money is now gone with DOS. And so optional cannot recover that particular money. What I'm really focusing on is on the trial court. Has anything happened in terms of the litigation? We were led to believe that there were some special motions filed before this court in a quasi-related proceeding. And I'm just trying to pin down, is there anything that is going on in the district court that could affect your position in this case? I'm a little ‑‑ I'm not sure what it is that you're asking me. There have been things that have been going on. Ultimately ‑‑ Well, has the court made definitive findings yet on the priorities? What is the status of that? That therein lies the rub, if you will, because it was actually a denial of our ‑‑ she denied our summary judgment motion that we were first in time. However, when we levied, and in response to this particular injunction, that was elevated then to actual findings that, in fact, we were last in time and that the government was entitled to jump the line, if you will, because of ‑‑ But has the government executed? No. The government has ‑‑ So everybody is frozen, then, pending the outcome of this case. Is that correct to say? No. It's not correct to say because of the ‑‑ there has been a transfer of money from Credit Suisse that has taken place. And ‑‑ Was that before the injunction? That was before, wasn't it? That was before the injunction. However, that was not even considered by the district court in granting the injunction, the equities related to that. And at the same time, the district court had entered an order requiring the Kims and their counsel to produce bank statements to let us see how much money is left in Switzerland. And what has happened to that particular money? And for a year and a half, they still haven't done that to this day. So, you know, in all likelihood, whatever was there has all been removed, but we don't even have compliance with that order a year and a half later. Okay. Well, I'm going back to Judge Gonzalez's question. Within the confines of this specific appeal that we're deciding right here, what are you asking this court to do? We are asking this court to dissolve the injunction and allow the levies to proceed. That's what we're asking the court to do. Your levy, optional's levy. Optional's levy. Optional is the one who has levied on the specific properties, in this case, personal properties, the monies that are here in the United States. But how do we entertain the competing claims of Honig and of the government in this appeal? Well, they raised those particular issues, and that was what the court relied on in finding irreparable harm, that there was some claims to these particular properties by Honig and or the government. And so — Isn't that true, though? No. It is true in the abstract, but when you get down to the merits of those particular claims, it is not true, because with respect to the government, optional's judgment lien was first in time. And the legal error made by the district court was saying that her order, which was vacated and therefore of no force in effect, somehow wiped out optional's priority in time here and — Excuse me, counsel, because your time is — do you have any case that says that when a party wins an appeal, it is entitled to an equitable lien? I am not aware of a specific case in that that would fall on anywhere near all fours with respect to this particular case, but equitable — You seem to be arguing that since, you know, optional 1, that it should have an equitable lien first in time. And I see no authority for that anywhere. Well, we're not saying that optional — what our position is that optional was first in time. We thought — It was vacated. But that's what — that is the legal decision, because the — under the Supreme Court law, Butler v. Eaton from 1891, and that was adopted by the Ninth Circuit in Keller v. Hall, that was a nullity. So what the district court essentially did was take a nullity and use a nullity to say that optional's judgment lien, which was out there and effective at all points in time, was a nullity — was itself a nullity. And it wasn't a nullity. What was the nullity was her particular reliance or what was improper was her reliance legally on that and was vacating and being a nullity. But if not, if there is some grounds for doing that, that's when we get into restitution on reversal and that particular Federal law privilege. Thank you, counsel. The time for your side has expired. Thank you. Thank you. We'll hear now from the other side. Good morning, Your Honors. I'm Eric Koenig. I represent myself, my law firm, and the Kim claimants, and I'm going to share my time with the government depending on the questions the Court has. All right. Between you, you have 15 minutes. And we'll — hopefully she'll step up and say, please sit down. It's my pleasure. All right. Hopefully. I don't want you to push me over here. All right. Your Honor, it's ironic. Originally, optional was up here before the Ninth Circuit saying we want our day in court, we want the competing interests determined to the ownership of the property. And so this Court agreed and remanded back to district court and said district court, hold some type of hearing trial or something to determine who owns the property, the claims to the property. And the Kim claimants are claiming that they're the owners, and optional is claiming it should be declared the owner based on a constructive trust. And to answer Judge Scanlon's question, there are trial proceedings pending in the district court now. There were summary judgments filed, cross-motion for summary judgment as to the ownership issue, and the judge denied both and has set it for trial. The trial is set for April. So the trial will determine ownership of the property? That's correct, Your Honor. Between whom? Between optional and the Kim claimants. And, again, what's ironic is in the pretrial pleadings, optional has claimed that the Kim claimants do not hold valid title of the property. They are not the owners of the property. And why I say that's ironic is optional is now trying to execute against property of the judgment debtors who optional is claiming do not own the property. And so how can optional execute a levy against someone who doesn't own property? And they're taking opposition. They're not the owners of the property. You can't execute against property that does not belong to the judgment debtor. So that's one point I think that's curious that was raised in the pleadings, Your Honor. Counsel, would you respond to Mr. Rogari's comment about transfer of funds from this Swiss bank? Oh, yeah. There was a state court lawsuit by Doss Corporation against the Kim claimants. And Doss is out of this case now. Is that right? Doss, after that settlement was finished, Doss is out. And what happened was Doss had filed a criminal complaint in Switzerland against Christopher Kim, one of the Kim claimants. And there was a Swiss prosecutor who froze the money in Switzerland based on that criminal complaint. The U.S. government originally had a mutual legal assistance treaty request freeze on the requested on the same money, which was dissolved once the government lost on summary judgment. But that other freeze existed by the Swiss prosecutor. The Swiss prosecutor had total control over the money over there. Okay. And that all happened before the action on the motion for preliminary injunction in this case? Oh, yeah. That happened six, nine months, maybe a year before. And that's not before us, I gather. No. It's not before us. It's before us raised in optional pleading based on equity. It's an issue that Optional is raising. Right. It's an equitable issue. Is it $13 million? $13 million that was controlled by the Swiss prosecutor and the Swiss prosecutor released based on a settlement. But it's an issue raised by Optional because of this issue of equity against me and my son, I guess. The Court raised an interesting issue to Mr. Regari, which was, well, what does Optional want out of this proceeding? Does it want us to want the Court to determine lien priority or what? Originally, they wanted a trial in district court to determine ownership. They were a constructive trust claim. But now it appears it does not want the trial, even though we're going forward and they filed pretrial pleadings. Now it wants to just take the property, notwithstanding this lien priority issue. So it sounds like Mr. Regari is asking the Court to determine lien priority. Of course, the one problem is, is the Court rules on the lien priority issue and finds whatever order. If Optional is not first in line, then Optional is going to turn around and say, well, now we want a trial back in district court because now we're last. Now we want to prove that we're the owners of the property. Will that be part of the trial, though? I mean, I guess ownership of the property will include lien priority? Or is she already determined? She's already determined lien priority. There was a – the parties determined with the Court the procedure for determining lien priority for purposes of trying to settle the case. They were originally first, though, weren't they, before it went up on appeal? No, no, no.  They were never first. They were always just a claimant. As a matter of fact, the Kim claimants were always first because they held title of the property. They won summary judgment against the government in an order releasing the property back to the Kim claimants. And the order was vacated, essentially, so Optional and DOS could file claim – their own claims or pursue their own claims for the property. So we're on track for trial. I'm sorry. Presumably, they had a judgment lien contention or claim after the first round, did it not? No, no, that came later. Oh, yeah. It was after the first round. It was actually after two rounds. The – there was one round where the summary judgment – Well, they had a very substantial victory in the district court, which then came on appeal. Oh, you're talking about the related civil case. We have first originally a forfeiture case where all the property was seized and the government was trying to forfeit it. The Kim claimants won that case on summary judgment against the government. DOS and Optional also filed claims. And DOS and Optional said, well, wait a second. You can't go – money can't be released – the property can't be released to the Kim claimants because we also have claims against the property. So this court remanded back to the district court twice to say, okay, you've got to hold a trial. You've got to hold a trial as to determine ownership. And then those liens were erased? No, no, no. In the meantime, Optional had a separate lawsuit that followed, a personal lawsuit against the Kim claimants. Totally separate case. There was a trial in that case. Not part of this case. And as a result of that trial, got a judgment against five of the Kim claimants. So now it has this judgment which was affirmed on appeal. Part of it was affirmed on appeal. But presumably, they might have had a judgment lien claim with respect to that judgment. But as I understand it, they never sought a stay pending appeal. Yeah. I'm not sure what the Court is referring to as far as the stay of that. They got a judgment. Right. It's a final judgment. Right. But it was reversed in part. It was reversed in part. Okay. That's correct. But it's still the same value because it was essentially a double judgment, same amount on both causes of action. But so it was reversed in part, but it was sent back to the district court. District court entered a new judgment based on the one cause of action that was affirmed. And now it has a judgment that it can try to execute against property. The problem is the district court in this case is holding on to that property and trying to determine the ownership claims to that property based on a remand by this court for that particular case. And that's what we're doing right now in the district court. Optional was impatient, saying, well, although we're trying to prove our ownership claims to that property, we're going to go ahead and try to take the property anyway. Now, I believe you said earlier that the trial judge has made determinations on priorities. That's correct. But so what happens in this April case? The April case is, well, that's the conflict we have here. The April case is to determine ownership of the property between the Kim claimants and Optional based on a claim of constructive trust that Optional has been making. And will the priorities that having now been determined affect that case in some way? Yes. If Optional wins and has a constructive trust imposed, Optional wins completely and it owns the property. And that's the properties in this case. And that will be determined in the April trial. Exactly. If Optional loses that trial and the Kim claimants are found to be the owners of the property, that gets disallowed. And then the lien holders at the court will have jurisdiction over the property and is holding the property. The court will then make orders saying, okay, this is how the property is going to be distributed. Because she's already determined the lien. She's already distributed based on motions filed by the parties. I think I probably need to give the government some time. Thank you, Your Honors. Good morning, Your Honors. My name is Melissa Briggs. I'm representing the United States. And with me at council table is Gavin Green from the U.S. Attorney's Office here in L.A. Thank you, Ms. Briggs. Your Honors, it's the government's position that the district court did not abuse its discretion in making the status quo here until the April 2013 trial that's scheduled. And as Mr. Honig said, at that trial, there the district court will determine who's the owner of the seized assets, either Optional or the Kim claimants. If Optional proves its constructive trust theory, and based on their conversion judgment, all they have to prove is tracing. If they prove that, then they get all the seized assets. The government has no claim at all. Only if the Kim claimants prevail does this order the lien priority decision that the district court made earlier at Optional's motion to try to aid settlement negotiations come into play. It's premature to be considered now because it only comes into play if Optional loses and does not prevail on its constructive trust theory. Optional actually filed an appeal from that order when it was entered. The government moved to dismiss because it was not a final appealable order. And this Court dismissed that appeal in March 2012. And so the government's going to weight the outcome of the April trial. Right. Do you have any other questions for the government? No. Thank you so much for your time. Thank you. Thank you. Counsel. The case just argued will be submitted for decision.
judges: Gonzalez, Nelson, O'Scannlain